STATE of Iowa, Appellee,

v.

Dennis Ronald
REITENBAUGH, Appellant.

No. 85–618.

Supreme Court of Iowa.

Aug. 20, 1986.

Charles L. Harrington, Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and Philip L. Krejci, Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

Defendant Dennis Reitenbaugh was tried, convicted and sentenced on charges of third offense operating a motor vehicle while intoxicated, operating a motor vehicle while his license was barred, and being an habitual offender. *See* Iowa Code §§ 321.-281, 321.561, 902.8 (1983). This appeal concerns the admissibility at trial of a public record, an arrest warrant issued by and filed with the clerk of the district court. The trial court admitted the arrest warrant, over defendant's timely hearsay objection, on the issue whether defendant had fled from the state to avoid prosecution. The State contends: (1) the arrest warrant was admissible under Iowa Rule of Evidence 803(8), which excepts from the hearsay rule certain public records and reports; and (2) the document was merely cumulative and not prejudicial to defendant. We disagree with both contentions, and we therefore reverse defendant's convictions and remand for a new trial.

Defendant was initially arrested on January 31, 1984 when a deputy sheriff investigating a one-car traffic accident concluded that defendant had been driving the vehicle while intoxicated. Defendant thereafter was released from custody after signing a pre-trial release agreement. One provision of the agreement conditioned his release from custody on his reporting three times each week to a pre-trial supervisor in the department of correctional services. By signing the agreement defendant acknowledged his understanding that if he violated any condition of his release, a warrant might be issued for his arrest.

On February 13, 1984 defendant entered a written plea of not guilty to the charges filed against him. Nine days later the department of correctional services applied for an order terminating the pre-trial release of defendant, and the probation officer who signed the written application gave the following somewhat terse grounds for termination:

Failed to contact pre-trial supervisor in person 2–15–84. Whereabouts unknown since 2–13–84.

On that same day, February 22, 1984, a judicial officer acted upon the application by entering an order relieving the department of correctional services of any responsibility for pre-trial supervision of defendant. The order also directed the clerk of court to issue a warrant for the immediate arrest of defendant and scheduled a hearing to review defendant's eligibility for release. On the basis of that one-page application and order, the clerk of court issued on February 22 the arrest warrant which is the subject of this appeal, directing any peace officer to arrest defendant and take him before a magistrate.

We describe in detail the form and contents of this arrest warrant not because it was deficient (defendant did not challenge its issuance or validity) but because the prosecution at trial offered it in evidence on the issue of defendant's alleged flight from Iowa to avoid or retard prosecution. By a standard flight instruction the trial court instructed the jurors that such a flight would be a circumstance they could consider in determining the guilt or innocence of the defendant. The arrest warrant was pertinent to that issue because it recited on its face the above-quoted factual grounds for termination of defendant's pre-trial release, the probation officer's remarks concerning defendant's unknown whereabouts. When the prosecution offered the arrest warrant in evidence after electing not to call as a witness the probation officer, defendant interposed timely hearsay and materiality objections. Defendant limits this appeal to his contention that his hearsay objection should have been sustained.

The arrest warrant which the jurors were allowed to consider consisted of a printed form filled out with typewriting. The form did not have a printed reason that precisely fit the grounds on which defendant was to be arrested. The printed form referred to a "complaint" charging a specific criminal code violation, but this was not to be an initial arrest so the clerk of court deleted the word "complaint" from the printed form and instead borrowed wording directly from the probation officer's application for termination of pre-trial release. Consequently, the following partly-printed and partly-typewritten reasons for arresting defendant appeared on the face of the warrant (with the typewritten insertion here bracketed):

A [Application and Order for failure to contact pre-trial supervisor in person 2/15/84; Whereabouts unknown since 2/13/84] having been filed with me, and a finding of probable cause having made that the defendant committed the above crime.

Because the trial court overruled defendant's objections to the State's introduction of this exhibit, the jury was allowed to consider the probation officer's factual basis for initiating his arrest, even though the probation officer did not testify. The quoted statements in the arrest warrant were clearly within our definition of hearsay, "a statement, other than one made by the declarant while testifying at the trial or

hearing, offered in evidence to prove the truth of the matter asserted." Iowa R.Evid. 801(c); *see State v. Horn*, 282 N.W.2d 717, 724 (Iowa 1979). The prosecution plainly was asking the jury to believe that defendant's whereabouts were in truth unknown and to infer from that out-of-court statement that defendant had fled from the state in February of 1984. That hearsay was therefore inadmissible under Iowa Rules of Evidence 801 and 802 unless subject to one of the exceptions listed in rules 803 and 804. The State relies exclusively on one of those exceptions, the exception for public records and reports found in Iowa Rule of Evidence 803(8).

Iowa Rule of Evidence 803(8), provides:

(8) Public records and reports. (A) To the extent not otherwise provided in (B), records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to a duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. (B) The following are not within this exception to the hearsay rule: (i) investigative reports by police and other law enforcement personnel; (ii) investigative reports prepared by or for a government, a public office or an agency when offered by it in a case in which it is a party; (iii) factual findings offered by the State or political subdivision in criminal cases; (iv) factual findings resulting from special investigation of a particular complaint, case, or incident; (v) any matter as to which the sources of information or other circumstances indicate lack of trustworthiness. This subdivision, however, shall not supersede specific statutory provisions regarding the admissibility of particular public records and reports.

It is important to note that subpart A of this rule creates a hearsay exception for many public records and reports, but subpart B carves out of the exception five types of report. By way of background,

this Iowa rule of evidence which took effect on July 1, 1983 closely parallels Uniform Rule of Evidence 803(8), which our court had previously adopted by judicial decision. *See Hunt v. State*, 252 N.W.2d 715, 722 (Iowa 1977) (allowing use of consumer price index, a publication of the U.S. Department of Labor); *Henkel v. R and S Bottling Co.*, 323 N.W.2d 185, 192–93 (Iowa 1982) (applying uniform rule 803(8) to exclude report by federal bureau of epidemiology as lacking in basic indicia of reliability).

■ The evidentiary question presented in this case can readily be answered by applying the plain language of Iowa Rule of Evidence 803(8). The arrest warrant did satisfy subpart A of the rule; it was a record of a public office, the clerk's office, and concerned a regularly conducted and regularly recorded activity of that office (the issuance and filing of arrest warrants) on which the clerk had a duty to report. Subpart B of rule 803(8), however, excepted this arrest warrant from admissibility under subpart A.

We agree with defendant that the statements in the warrant concerning defendant's whereabouts and failure to contact his pre-trial supervisor were the kind of investigative report and "factual findings" which subparts (B)(i), (B)(ii), and (B)(iv), make inadmissible. Those hearsay statements were made by a probation officer, a person who was plainly acting as a peace officer and allied in this instance with fellow peace officers. *See State v. Nelsen*, 390 N.W.2d 589, 592 (Iowa 1986). They were inadmissible as "investigative reports by ... law enforcement personnel." Iowa R.Evid. 803(8)(B)(i).

The probation officer's statements were also made inadmissible by rule 803(8)(B)(ii), because they plainly were part of an investigative report prepared by the State for the purpose of having defendant arrested for violation of conditions of his pre-trial release. Furthermore, statements of the probation officer constituted factual findings resulting from the special investiga-

tion of a particular incident, defendant's failure to report, thereby making those hearsay statements inadmissible under rule 803(8)(B)(iv).

■ These three specific subpart B exceptions to the admissibility of public records and reports represent sound public policy. In criminal cases like this, the State ought not be allowed to introduce substantive evidence tending to prove commission of the charged offenses without calling as witnesses, subject to cross-examination, the persons who have specially investigated particular incidents and reported in writing on those investigations. The better policy is to require the prosecution to call its investigators as witnesses rather than allowing the State to satisfy its burden of proof with written reports bearing a certain facial authenticity which a jury might attribute to public records.

The State cites several federal cases to support its contention that an investigator's report should be excluded only when the officer reports "observations made in an adversarial setting" which are "less reliable" than records of "routine non-adversarial matters." *United States v. Hernandez-Rojas*, 617 F.2d 533, 535 (9th Cir.) *cert. denied*, 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980) (admitting deportation warrant indicating defendant had previously been deported); *see United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985) (admitting similar warrant of deportation); *United States v. Torres*, 733 F.2d 449, 455 n. 5 (7th Cir.) *cert. denied* — U.S. —, 105 S.Ct. 204, 83 L.Ed.2d 135 (1984) (admitting Indian tribal roll); *United States v. Orozco*, 590 F.2d 789, 793–94 (9th Cir.1979), *cert. denied*, 439 U.S. 1049, 99 S.Ct. 728, 58 L.Ed.2d 709 (1978) (admitting automobile license records to show previous border-crossing incident). Those cases are inapposite for two reasons.

None of the documents admitted as public records in those cases contained investigative findings of a public officer who was allied with the prosecution, yet was not called as a witness at trial. Here, in contrast, the trial court admitted the probation officer's out-of-court investigative report purporting to prove defendant had fled from Iowa to avoid or retard prosecution. The hearsay statements of the peace officer tended to bolster testimony of other officers supporting the criminal charges against defendant.

The federal cases relied upon by the State are also inapposite because federal rule of evidence 803(8) which they applied is strikingly different from the Iowa rule of the same number. Federal rule 803(8) provides:

> (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Like Alaska, Delaware, Maine, and Montana, Iowa adopted the basic wording of Uniform Rule of Evidence 803(8) governing public records rather than the language of the federal rule. *See generally* 4 J. Weinstein, *Evidence* ¶ 803(8)[05] (1985). The resulting Iowa rule is clearer in text and in its expression of sound public policy which requires officials to testify in person with regard to certain investigative reports.

The plain wording of subpart B of rule 803(8) precluded admission in evidence of the arrest warrant in this case; defendant's timely hearsay objection should have been sustained.

II. The State's fall-back position is that the admission of the arrest warrant was harmless because it was merely cumulative of other testimony concerning defendant's absence from the state. The State points to testimony of the deputy sheriff that he arrested defendant in Arizona on October

25, 1984, which was more than eight months after his arraignment on these charges.

 We find no merit in the State's harmless-error contention. The erroneous admission of hearsay is presumed to be prejudicial, and the person claiming harmless error must affirmatively establish absence of prejudice. *State v. Horn*, 282 N.W.2d at 724; *State v. Johnson*, 272 N.W.2d 480, 482 (Iowa 1978); *State v. Menke*, 227 N.W.2d 184, 188 (Iowa 1975). The State has not made such a showing here. Only the arrest warrant suggested that defendant had fled from the state to avoid prosecution during the first eight months after his arraignment. Evidence that he was arrested in Arizona in October was of a different character than the hearsay statements in the arrest warrant from which the jury could directly infer that he left Iowa eight months earlier.

We conclude that defendant was deprived of a fair trial when the trial court erroneously admitted in evidence the arrest warrant containing the probation officer's hearsay remarks concerning his investigation of defendant's whereabouts. We reverse defendant's convictions and remand this case to the district court for a new trial.

REVERSED AND REMANDED.